EDWARD LYNCH *vs.* UNION INSTITUTION FOR SAVINGS
& another.

Suffolk.    May 23, 24, 1893. — June 20, 1893.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Eviction of Sublessee — Damages — Injunction.*

On a bill in equity to prevent a continuing trespass, or a permanent injury to the real estate of the plaintiff, the question whether he shall have a prohibitory injunction, or, if the work affecting the property has been done, a mandatory injunction requiring the restoration of the estate to its former condition depends on a consideration of all the equities between the parties, and, in general, where the defendant has gone on without right and without excuse in an attempt to appropriate the plaintiff's property, or to interfere with his rights, and has changed the condition of his real estate, he will be compelled to undo, so far as possible, what he has wrongfully done affecting the plaintiff, and to pay the damages, and in such a case the plaintiff will not be compelled to part with his property at a valuation, even though it would be cheaper for the defendant to pay the damages in money than to restore the property; but where, by an innocent mistake, erections have been placed a little upon the plaintiff's land, and the damage caused to the defendant by their removal would be greatly disproportionate to the injury suffered by the plaintiff, their removal will not be ordered, but the plaintiff will be left to his remedy at law.

On a bill in equity to restrain a threatened eviction of the plaintiff by the owner of the fee, it appeared that the plaintiff was a sublessee under a lease assented to by the defendant's predecessor in title, and binding on the defendant; that that portion of the plaintiff's property from which he had been evicted was an alcove or corner in the basement about twelve by thirteen feet in area; that this was but a small part of the space covered by his lease, and that to restore it to him in its original condition would not only involve material and extensive changes in the different parts of the basement, but would require the removal of a vault enclosed in masonry in the alcove, in which were kept the books of the defendant, and would leave unsupported the vault and safe in the defendant's banking-room above, in which were kept its securities, bonds, notes, and stocks, to the value of about $5,000,000. It further appeared, that to make the change would cost about $3,500, and would compel the defendant to find some other place of deposit for the contents of the safe while the work was being done, and that the plaintiff's lease had only about a year and a half longer to run. The defendant asked for a decree which would permit it to retain the space occupied by its vault, and to build a brick wall across enclosing the vault, and to give the plaintiff a space somewhat larger than this in the front part of the basement adjoining the portion covered by his lease, and which should also require it to restore to its original condition, so far as possible, all the remainder of his premises. The plaintiff, who was a mason and builder, and who used the premises only as a place for the storage of doors and window sashes, and other similar property, conceded that the proposed change would not leave his estate

in any particular less desirable for any use to which he might wish to put it, and gave as his only reasons for his unwillingness to accept the substituted space that he had not been treated properly by the defendant, and that he thought it easier for the defendant to arrange a settlement with him. *Held,* that it would be inequitable to compel the defendant to expend a large sum of money, and to suffer in addition great inconvenience and loss in its business, simply to enable the plaintiff to enjoy for a year and a half the use of the basement, including the space in the alcove, instead of the same basement without that space, and with a greater space added to it on the opposite side towards the front, and that the case showed no such deliberately wrongful conduct on the part of the defendant as should deprive it of the benefit of these equities.

KNOWLTON, J.   After the decision in this case, reported in 158 Mass. 394, a hearing was had in the Superior Court in regard to the decree to be entered, and the evidence tended to show that to restore the plaintiff's premises to their former condition would not only involve material and extensive changes in the different parts of the basement of the building, but would require the defendant Institution, which was the owner of the reversion subject to the plaintiff's lease, to remove a vault enclosed in masonry, in which were kept the books of the corporation, leaving unsupported its vault and safe in the banking-room above, in which were kept its securities, bonds, notes, and stocks, representing a value of about $5,000,000.   To do this would cost about $3,500, and would compel the defendant Institution to find some other place of deposit for the contents of this safe while the work was being done.   The portion of the plaintiff's premises occupied by this vault was an alcove or corner of the basement about thirteen by twelve feet in area.   This was but a small part of the space covered by the plaintiff's lease, all of which was in the basement. At the hearing, the defendant Institution asked for a decree which would permit it to retain the space occupied by its vault, and to build a brick wall across enclosing the vault, and to give the plaintiff a space somewhat larger than this in the front part of the basement adjoining the portion covered by his lease, and which should also require it to restore to its original condition, so far as possible, all the remainder of his premises.   The plaintiff objected, the court made a decree requiring the removal of the vault, and the case comes to this court on the question whether the defendant Institution may be permitted to retain the small space occupied by its vault, and to restore to the plaintiff the remainder of his premises, and to enlarge them by the addition of an equivalent or larger space on the front.

When a plaintiff brings a bill to prevent a continuing trespass or a permanent injury to his real estate, the question whether he shall have a prohibitory injunction, or, if the work affecting the property has been done, a mandatory injunction requiring the restoration of the estate to its former condition, depends on a consideration of all the equities between the parties. In general, where a defendant has gone on without right and without excuse in an attempt to appropriate the plaintiff's property, or to interfere with his rights, and has changed the condition of his real estate, he is compelled to undo, so far as possible, what he has wrongfully done affecting the plaintiff, and to pay the damages. In such a case the plaintiff is not compelled to part with his property at a valuation, even though it would be much cheaper for the defendant to pay the damages in money than to restore the property. The principal reason for this is that which lies at the foundation of the jurisdiction for decreeing specific performance of contracts for the sale of real estate. A particular piece of real estate cannot be replaced by any sum of money, however large, and one who wants a particular estate for a specific use, if deprived of his rights, cannot be said to receive an exact equivalent or complete indemnity by the payment of a sum of money. A title to real estate, therefore, will be protected in a court of equity by a decree which will preserve to the owner the property itself, instead of a sum of money which represents its value. One who has gone on wrongfully in a wilful invasion of the plaintiff's right in real estate has no equity to set up against the plaintiff's claim to have his property restored to him as it was before the wrong was done. Upon the evidence before us at the former hearing of the present case, it was held that the plaintiff might have a mandatory injunction requiring the defendant Institution to restore the premises to their former condition. *Lynch* v. *Union Institution for Savings*, 158 Mass. 394. See also *Tucker* v. *Howard*, 128 Mass. 361, and cases cited; *Attorney General* v. *Algonquin Club*, 153 Mass. 447, 454.

On the other hand, where, by an innocent mistake, erections have been placed a little upon the plaintiff's land, and the damage caused to the defendant by removal of them would be greatly disproportionate to the injury of which the plaintiff complains, the court will not order their removal, but will leave the plain-

tiff to his remedy at law.  *Hunter* v. *Carroll,* 64 N. H. 572.  *Low* v. *Innes,* 4 DeG., J. & S. 286.  *Aynsley* v. *Glover,* L. R. 18 Eq. 544, 553.  See also *Ford* v. *Knapp,* 102 N. Y. 135 ; *Thomas* v. *Evans,* 105 N. Y. 601.  The doctrines applied by the court of equity in cases of this kind call for a consideration of all the facts and circumstances which help to show what is just and right between the parties.  In *Brande* v. *Grace,* 154 Mass. 210, where it appeared that the defendant proceeded with full knowledge of the facts, and with notice of the plaintiff's claim, but with good reason to doubt whether the law would recognize such rights as the plaintiff claimed, it was held, when the claim was sustained, that, as the plaintiff's title was only under a lease that had less than a year to run, and as the cost of restoration of the premises would be greatly disproportionate to the advantages which the plaintiff could derive from the enjoyment of his estate, he should not have a decree for a restoration of the premises, but should be compensated in money.  In the case before us, the plaintiff's title is only under a lease, binding on the defendant Institution, which will expire in about a year and a half, and the Institution owns the reversion.  It has already been decided that he is to have an injunction, giving him the enjoyment of his premises.  He is a mason and builder, and he has used the property heretofore only as a place for the storage of doors, window sashes, and other similar property.  He pays as rent for it fifteen dollars per month.  Upon evidence taken at the last hearing, it now appears that he can have substantially the same premises without the removal of the defendant Institution's vault.  It was conceded by him in his testimony that the change of the small space occupied by the vault for the space proposed to be given him in the same basement adjoining the leased premises on the other side, would not leave his estate in any particular less desirable for any use to which he might wish to put it.  In cross examination he gave as the only reasons for his unwillingness to accept the substituted space, first, that he had not been treated properly by the defendant Institution, and, secondly, that he thought it easier for the Institution to arrange a settlement with him.  The decree suggested by the defendant Institution gives the plaintiff substantially the same property which he has sought to recover, and provides compensation for

the injury which he has received.   The principal reasons for the former decision are fully regarded by the defendant Institution's proposition.   It would be inequitable, under the circumstances of this case, to compel the Institution to expend $3,500, and to suffer in addition great inconvenience and loss in its business, simply to enable the plaintiff to enjoy for a year and a half the use of the basement, including the space in one corner thirteen by twelve feet, instead of the same basement without that space and with a greater space added to it on the opposite side towards the front.   The case shows no such deliberately wrongful conduct on the part of the defendant Institution as should deprive it of the benefit of equities such as these.   The evidence tends to show that the Institution did not believe the plaintiff's claim to be valid until it was shown to be so at the first hearing, and at that time the work had so far advanced that the judge who heard the case thought·it equitable to apply the rule laid down in *Brande* v. *Grace*, 154 Mass. 210, and to hold that the plaintiff should not have an injunction, but should be compensated in money.   After the decision to that effect in the Superior Court, the defendant Institution finished the work.   This court thought the Institution should be held more strictly ; but it is enough, under the facts shown at the final hearing, if the plaintiff receives the premises substantially as they were before the work was begun, so that they are as good for every kind of use to which he can put them during the remainder of the short term which his lease runs, and if he also receives full compensation in money for all the injuries which he has suffered.   This principle, which calls for a consideration of all the equities, has repeatedly been applied in the same way in analogous cases.   *Curran* v. *Holyoke Water Power Co.* 116 Mass. 90.   *Morse* v. *Hill*, 136 Mass. 60, 70. *Attorney General* v. *Algonquin Club*, 153 Mass. 447, 455.

The decree must be modified in accordance with the defendant Institution's proposition, which appears in the report, on the Institution's renewal of that proposition in the Superior Court.

*Decree accordingly.*

*R. M. Morse*, for the Union Institution for Savings.

*S. L. Whipple*, for the plaintiff.