PAUL BUTLER & another *vs.* ATTORNEY GENERAL.

Essex.   February 26, 1906. — March 26, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Seashore.   Colony Ordinance of 1647.   Easement.   Bathing.   Fishing and Fowling.*

Under the common law of this Commonwealth as settled by the Colony Ordinance of 1647 the rights of the public in the land between high water mark and low water mark consist of an easement for the purposes of navigation and free fishing and fowling and of passing freely over and through the water without any use of the land underneath, wherever the tide ebbs and flows.

Under the common law of this Commonwealth as settled by the Colony Ordinance of 1647 there is no public right of bathing in such a way as to make any use of the land on the seashore between high water mark and low water mark.

The public right to use the seashore between high water mark and low water mark for fowling, settled as part of the common law of this Commonwealth by the Colony Ordinance of 1647, was not nullified by the subsequent grant of lands between high water mark and low water mark to individual proprietors.

PETITION, filed in the Court of Land Registration, now the Land Court, on February 8, 1902, for the registration of the title to certain land on the seashore at Bay View in Gloucester, having an unimproved beach.

In the Land Court the case was heard by *Davis,* J., who found the following facts:

The premises include a vacant, unimproved, sandy beach not exceeding one hundred rods in width, and the petitioners own to low water mark.   The ownership of certain adjoining tracts belonging to other persons also extends to low water mark, so

that access may be had to the petitioners' beach between high and low water from the immediately adjacent shore of other owners without trespassing upon the upland. The adjoining estate to the west has been cut up into summer cottage lots, and the numerous owners thereof have rights of access to the shore adjoining the petitioners' beach. The owners of these and other adjoining estates claim the right of bathing on the petitioners' beach, and also of passing over the shore between high and low water marks for purposes of navigation, in pleasure boats as well as otherwise, fishing, fowling and for general purposes, as public rights; all these rights also are asserted on behalf of the general public by the Attorney General.

The petitioners requested the following rulings:

1. The rights of the public in the beach between high and low water as limited by the colonial ordinance of 1641–47, comprised only the rights of navigation and fishing.

2. The rights of the public in the beach between high and low water as limited by the colonial ordinance do not include the right of bathing.

3. The rights of the public in the beach between high and low water mark as limited by the colonial ordinance do not include the right to go upon such beach when the tide is out, for the purpose of fowling.

4. The rights of the public in the beach between high and low water mark as limited by the colonial ordinance do not carry with them a right to go over or across the land above high water mark to reach such beach.

5. The rights of the public in the beach between high and low water mark as limited by the colonial ordinance do not include the right to walk over such beach for purposes other than navigation and fishing.

The Attorney General requested the following ruling:

Over so much of the shore between high and low water mark as is bare and unimproved, the public have the right of navigation, in pleasure boats as well as otherwise, of fishing (including the taking of shellfish), of fowling, both from boats and by walking over the flats for the purpose, of bathing, and also of passage for general purposes when the tide is out.

The petitioners further requested that if the judge in regis-

tering their title declared it to be subject to such rights as the public might have in the beach between high and low water marks, such rights should be clearly defined, and their nature and limitations be set forth in the decree, and the Attorney General requested that the decree should prescribe whether the public rights extend to extreme high water mark or only to mean high water mark.

To the requests contained in the paragraph last foregoing the judge assented, but all of the rulings requested he refused, and instead thereof, ruled as follows:

1. So much of the locus as lies below mean high water mark is subject to the public rights in regard to navigation, and to the right in the general public, at any state of the tide, of fishing and fowling thereon.

2. These rights do not carry with them any right to cross the locus above mean high water mark.

3. There is no public right of bathing on the locus.

4. There is no public right to cross the beach or shore for any purpose other than navigation, fishing or fowling.

The judge ordered a decree for the petitioners in accordance with the rulings given.

To the refusal to rule as requested by him, and to all of the rulings given, the Attorney General excepted, and the petitioners excepted to the refusal to give the third ruling requested by them.

At the request of the parties the judge reported the case for determination by this court. If the rulings and refusals to rule were right a final decree was to issue as ordered; otherwise such final decree was to be made as this court might direct.

The case was submitted on briefs at the consultation of the court in February, 1906, and afterwards was submitted on briefs to all the justices.

*G. L. Mayberry & F. L. Washburn*, for the petitioners.

*H. Winn*, for the Attorney General.

KNOWLTON, C. J. This is a petition for the registration of a title to an estate on the seashore, at Bay View in Gloucester. The premises include a vacant, unimproved, sandy beach, not exceeding one hundred rods in width, over which the tide ebbs and flows. Questions arose at the hearing in regard to rights,

claimed by owners of neighboring estates along the shore, and by the Attorney General in behalf of the general public, to use the beach for bathing, fishing, fowling, navigation and for general purposes. Requests for rulings were made by both parties, and the judge of the Land Court ruled as follows: "1. So much of the locus as lies below mean high water mark is subject to the public rights in regard to navigation, and to the right in the general public, at any state of the tide, of fishing and fowling thereon. 2. These rights do not carry with them any right to cross the locus above mean high water mark. 3. There is no public right of bathing on the locus. 4. There is no public right to cross the beach or shore for any purpose other than navigation, fishing or fowling." To the refusal to rule as requested by him, and to all the rulings given, the Attorney General excepted, and the petitioners excepted to the ruling that the general public have a right to use the beach for fowling. The principal questions argued before us are whether the public have a right to use the premises between high water mark and low water mark for bathing and for fowling, or for either of these purposes.

The answers to these questions depend upon the common law, as modified by the colonial ordinance of 1641–47. The most important part of the argument has been in regard to bathing. The law of England on this subject was discussed at great length and with much learning in *Blundell* v. *Catterall*, 5 B. & Ald. 268, and it was held, by three of the four judges, that at common law there is no public right of bathing in such a way as to make any use of the land on the seashore between high water mark and low water mark. Although this decision has been criticised, it has been treated by the courts and by most text writers as settling the law. It was unanimously affirmed in the recent case of *Brinckman* v. *Matley*, [1904] 2 Ch. 313. If we follow the decisions in England we thereby settle this part of the respondent's claim. See *Shively* v. *Bowlby*, 152 U. S. 1, 19, 26.

In considering the colonial ordinance of 1641–47 and the cases which have been decided under it, we find confirmation of this view. The ordinance is treated as settling the common law of Massachusetts, and as embodying the local law as to the

*jus privatum,* which in England is represented by the Crown, and the *jus publicum,* which is there represented by the Parliament, both of which in this country are subject to the exercise of legislative power. *Commonwealth* v. *Charlestown,* 1 Pick. 180, 183–185. *Drake* v. *Curtis,* 1 Cush. 395. *Commonwealth* v. *Alger,* 7 Cush. 53, 93. *Weston* v. *Sampson,* 8 Cush. 347, 355. *Commonwealth* v. *Roxbury,* 9 Gray, 451, 483. *Henry* v. *Newburyport,* 149 Mass. 582, 584. In the first part of the ordinance public rights are secured, for householders, to free fishing and fowling wherever the sea ebbs and flows. In the latter part of the ordinance, private ownership, subject to the right of navigation and other public rights, is extended to " low water mark where the sea doth not ebb above one hundred rods, and not more wheresoever it ebbs further." In tide water, above low water mark, no other public rights are mentioned. Except as against public rights, which are protected for the benefit of the people, the private ownership is made perfect.

The provisions and the conditions in reference to land under tide water are different from those that pertain to great ponds. In these the entire proprietorship is kept in the State, for the benefit of the public, and, unless granted by the Legislature or by a town under its authority, they are to be appropriated to such public uses as the progress of civilization and the increasing wants of the community properly demand. *Attorney General* v. *Herrick,* 190 Mass. 307. *West Roxbury* v. *Stoddard,* 7 Allen, 158. *Hittinger* v. *Eames,* 121 Mass. 539. *Slater* v. *Gunn,* 170 Mass. 509. In the seashore the entire property, under the colonial ordinance, is in the individual, subject to the public rights. *Commonwealth* v. *Alger,* 7 Cush. 53, 78. *Commonwealth* v. *Roxbury,* 9 Gray, 451, 492. *Weston* v. *Sampson,* 8 Cush. 347. *Marshall* v. *Walker,* 93 Maine, 532, 536. See also other cases above cited. Among these is, of course, the right of navigation, with such incidental rights as pertain thereto. We think that there is a right to swim or float in or upon public waters as well as to sail upon them. But we do not think that this includes a right to use for bathing purposes, as these words are commonly understood, that part of the beach or shore above low water mark, where the distance to high water mark does not exceed one hundred rods, whether covered with water or not. It is plain,

we think, that under the law of Massachusetts there is no reservation or recognition of bathing on the beach as a separate right of property in individuals or the public under the colonial ordinance.

The right of fowling was expressly mentioned in the ordinance of 1647, and was thereby created as a public right in householders, if it did not previously exist at the common law. The language was retained in the ordinance when it was enlarged by additional provisions. Col. Laws, 1660, (Whitmore's ed.) 90. There may be ground for a question as to whether it was nullified by the subsequent grant of lands to individual proprietors between high water mark and low water mark. We think it better to hold that it was not. We know of no case in which the question has been decided, but in *Commonwealth* v. *Alger*, 7 Cush. 53, 68, the right to use the shore for fowling is referred to as a public right.

We have considered the questions principally discussed at the argument. We are of opinion *that a* decree should be entered that the premises are held by the petitioners in fee, subject, however, as to that portion between high and low water mark, to the easement of the public for the purposes of navigation and free fishing and fowling, and of passing freely over and through the water without any use of the land underneath, wherever the tide ebbs and flows.

*So ordered.*