GEORGE G. CROCKER & others *vs.* EDGAR R. CHAMPLIN & others.

Suffolk.　March 11, 12, 1909. — June 1, 1909.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Flats.　Colony Ordinance of 1647.　Charles River Basin.*

The owners of flats in this Commonwealth acquired by virtue of the Colony Ordinance of 1647 hold them subject to the right of the Commonwealth to cover them with deep water by means of a permanent dam maintained for purposes of navigation, and their diminution in value from being thus permanently covered with water is not a taking of property from the owners.

The owners of flats in the Charles River Basin, theretofore bare at low tide and valuable in furnishing sand and gravel for sale, were deprived of no property by the erection of the dam authorized by St. 1903, c. 465, as amended by St. 1906, c. 402, maintaining the water over the flats at a permanent depth of eight feet.

BILL IN EQUITY, filed in the Supreme Judicial Court on October 14 and amended on October 31, 1908, by the owners in fee of two parcels of flats in Cambridge south and west of the West Boston Bridge and north and west of the thread of the Charles River, against the members of the Charles River Basin commission appointed under the provisions of St. 1903, c. 465, and directed by § 3 of that chapter to "construct across Charles River between the cities of Boston and Cambridge, a dam, at least sufficiently high to hold back all tides and to maintain in the basin above the dam a substantially permanent water level not less than eight feet above Boston base," the dam to occupy substantially the site of the former Craigie Bridge, to enjoin the defendants from closing the dam and raising the level of the water as proposed, thus depriving the plaintiffs of a profitable use of their property.

The case was heard by *Loring*, J., who made a memorandum of findings as follows:

"I find in this case that the plaintiffs are the owners of a valuable tract of flats in which there is a deposit of sand and gravel; that this sand and gravel is of a large area, so situated

and of such a character that under natural conditions it could be excavated and sold at a profit; and that the property is a valuable one, if natural conditions continue.

" I also find as a fact that the imposition of this body of eight feet of water above these flats continuously adds materially to the cost of excavating the gravel, and materially diminishes the value of that property for this, the only purpose of value which the property has.

" But I think it is very clear that this St. of 1903, c. 465, was passed in the exercise of the police power of the State. Take § 6, which is the section under which the plaintiffs in this case contend that there ought to have been a taking of their land, — that section leaves out a provision that any person damaged by the acts done by virtue of this chapter shall have his compensation on bringing a petition. That section is restricted to giving authority to the public officers, who were charged with carrying out the scheme, a right to take property, and if property was taken then the owner had his petition for compensation. It leaves out the other clause which you find in the highway acts and in similar statutes, where the action taken is unquestionably one in the exercise of eminent domain, — that any one damaged by acts done under the authority given shall have his damages. I think, therefore, that it is clear from the terms of the act that the Legislature thought that they were exercising the police power in authorizing the construction of this dam and what went with it. What went with it I think is only of incidental importance here.

" The strength of the argument which the plaintiffs have addressed to me in this case is that the police power cannot be exercised to make a water park. The same idea was put forward in the contention that in regulating navigation the public can go no further than to make regulations as to how the water shall be used when it is over flats by force of natural causes. I differ from that entirely. I do not think it is true. I do not think it is true that the owner of flats has a right to the ebb and flow of the tide in its natural condition. On the contrary, I think that if the State, representing the public, thinks that the public right of navigation requires that the ebb and flow of the tide shall be regulated, it can, in the exercise of the public right

of navigation, interfere with, check, or entirely exclude the ebb and flow of the tide.

" Take this very example, — it may be somewhat novel, but the principle seems clear to me, — take as an example the Charles River, and let us assume (and I think we can assume on the facts now before me) that the Legislature thought that the Charles River had become, so far as any useful purposes of navigation on the Charles River were concerned, — that the Charles River had become a river which ought to be devoted to that part of navigation which may be termed pleasure navigation, navigation for pleasure ; and, having arrived at that determination of fact, they say ' That that use, that particular use, and kind of navigation, shall be the use to which in future we are going to devote the waters of the Charles River, and for that purpose, we will make such provisions as we think wise ; in that connection we will provide for such commercial navigation as is consistent with this the best use of navigation of these waters, but only to that extent will we undertake to make provisions for commercial navigation ; and, having that in mind, we therefore declare that we are going to have a good body of water continuously in the Charles River,' — I think it is within the police power of the State to do that. And I think that is what they did.

" I think that when this eight feet of water was placed over the flats belonging to these plaintiffs, it was put there by the authority of the State, under the police power of the State.

" Take another example : Suppose the Legislature desires to widen a river, which is an arm of the sea, and to deepen its waters to further navigation for commercial interests. If the Legislature find that it is cheaper to dam the stream (putting in the necessary lock or locks) than to dredge it, I cannot believe that it is not within the limits of the police power for them to do so.

" I agree entirely with the argument which has been addressed to me as to measuring the interference with the plaintiffs' right of property by taking averages of depth of water. I quite agree that the opportunity of taking away gravel and sand is much greater with an ebb and flow of the tide, which gives you at one moment no water over it, and at another eight or nine feet. I

do not think it is fair to take the mean. But in my view it is within the police power of the State in regulating navigation to dam up the waters; and therefore I do not agree with the argument addressed to me on the part of the plaintiffs that they had, so long as the water is not there, the same right to that land as the owner of the upland has. I differ entirely from that argument. I think that is not true.

"I think, therefore, in this case, that the bill must be dismissed.

"I do not think that the plaintiffs are guilty of laches, and I so find."

The justice made a final decree that the bill be dismissed; and the plaintiffs appealed.

*C. F. Choate, Jr.*, for the plaintiffs.

*D. Malone*, Attorney General, *& J. F. Curtis*, Assistant Attorney General, for the defendants.

KNOWLTON, C. J. This is a suit in equity to enjoin the defendants, who constitute the Charles River Basin commission, from increasing the depth of the water over the plaintiffs' flats, a large part of the time, by maintaining the dam required to be built by the St. 1903, c. 465, as amended by St. 1906, c. 402. The plaintiffs are the owners of many acres of flats in the Charles River, extending southward from the shore in Cambridge. These lie at such a level as to be, for the most part, just uncovered at low tide. The maintenance of the dam will keep them constantly covered, to a depth of about eight feet. Beneath a thin layer of mud, there is, in the flats, a valuable deposit of sand and gravel, which can be used in building, and from which the plaintiffs have been accustomed to take large quantities for sale, under a license from the harbor and land commissioners and another license from the secretary of war of the United States. The title of the plaintiffs to the flats is under the Colonial Ordinance of 1647, and it is not contended that the erection and maintenance of the dam will affect any of their property except that below high water mark, which is held under this ordinance. The commission has not taken any part of the property of the plaintiffs, unless the increase of the depth of the water a large part of the time constitutes a taking, and there is no provision in the statute for compensation for this effect upon their property. The power of the Legislature

to authorize the erection and maintenance of the dam was considered at length in the *Home for Aged Women* v. *Commonwealth, ante,* 422, and it was held that the enactment of the law was a lawful. exercise of the power of the government, for the improvement of navigation and for other public purposes. It appears from the evidence that it will materially benefit navigation for industrial and commercial purposes, as well as navigation for pleasure, which is equally within the control of the State, and is recognized and encouraged under our laws. *Attorney General* v. *Woods,* 108 Mass. 436, 439. The fact that considerations of the public health and the public comfort were also involved is immaterial in this case.

The question is whether this increase in the depth of the water where the tide ebbs and flows is a taking of the plaintiffs' property. Were it not for the rights acquired by the plaintiffs under the Colonial Ordinance, there would be no question. There would be a mere change in property held by the State for a public use. Did the extension of the boundaries of private ownership, under the Colonial Ordinance, take away from the State the right to make such a change, for the improvement of navigation, without providing compensation to individual owners under the ordinance? We are of opinion that it did not. This ordinance gave to the owners only qualified rights. Treating it as a grant, the rights of the public to have the benefit of the waters for navigation, fishing and fowling were reserved. *Butler* v. *Attorney General,* 195 Mass. 79, 83. These include a right to control the property, so far as is reasonably necessary in the interests of navigation. This is the substance of the decision in *Commonwealth* v. *Alger,* 7 Cush. 53, 89, 91, in which it was held that the Commonwealth might establish harbor lines over flats in private ownership that had not been built upon, and exclude the owner from any use of them inconsistent with the most advantageous use that the public might make for purposes of navigation. This doctrine has been embodied in our legislation and in our decisions. R. L. c. 96, §§ 3, 14, 25. The statutes of the United States rest upon the same view of the law. U. S. St. of March 3, 1899, c. 425, § 10. 30 U. S. Sts. at Large, 1151. In *Boston* v. *Richardson,* 105 Mass. 351, 362, Mr. Justice Gray said : " Even a title in flats by grant from the

colony or Commonwealth, is subject, so long as they have not been built upon, to the authority of the Legislature, for the protection of the harbors and of the public right of navigation, to prohibit the taking of sand or gravel from the shore, or the erection of wharves beyond certain lines. *Commonwealth* v. *Tewksbury*, 11 Met. 55. *Commonwealth* v. *Alger*, 7 Cush. 53. *Boston* v. *Lecraw*, 17 How. 426, 433."

Such owners are not entitled to have the flow of water continue in its accustomed manner if the interests of the public require a change for the improvement of navigation. *Fitchburg Railroad* v. *Boston & Maine Railroad*, 3 Cush. 58, 88. *Davidson* v. *Boston & Maine Railroad*, 3 Cush. 91, 105, 106. The result in this case does not depend upon a suggestion that action in the interest of the public health and of the public comfort was an exercise of the police power, and for that reason justified an appropriation of property for the public benefit without compensation. Restriction and limitation upon the use of property, and even the destruction of property without compensation, is allowable in the exercise of the police power, if the use or continued existence of the property is dangerous or very harmful to the public. But to take property which is harmless and is being properly used, and to appropriate it to the improvement of the public health, is a different thing. Such a taking and appropriation, although for an object which it is within the police power to accomplish, calls for compensation. If the effect of this erection ·were permanently to inundate the plaintiffs' houses and lands above high water mark, the purpose of the Legislature would leave the effect a taking that must be paid for.

Our decision rests upon the ground that this improvement in navigation was one which, apart from the ordinance of 1647, the Government would have had a right to make as owner of the soil and as the representative of the public, and that the ordinance creating private property in flats reserved this right for the benefit of all the people. ·

The decision in *Bent* v. *Emery*, 173 Mass. 495, had reference to a removal of the substance of the land of the plaintiff, and the appropriation of it, under the contract for dredging, to use in the filling of flats in another place. In *Butler* v. *Attorney Gen-*

*eral,* 195 Mass. 79, 83, it is held that the private ownership of flats is subject to public rights, of which the right of navigation is one. The point under discussion was whether the public had a right to use the land on the beach for bathing, either under the water or along its edge. These cases are not at variance with the contention of the defendants.

*Bill dismissed.*