UNITED STATES of America

v.

Peter GRABLER.

Civ. A. No. 94–12159–GAO.

United States District Court, D. Massachusetts.

Oct. 13, 1995.

---

George B. Henderson, U.S. Atty's office, Boston, MA, for U.S.

Peter Grabler, Needham, MA, pro se.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

By this suit, the United States seeks injunctive relief against the defendant Peter Grabler's continuing trespass on land owned by it. The United States has moved for summary judgment both on its claims and on Grabler's counterclaim that alleges the government acted arbitrarily and discriminatorily in refusing either to sell him the land in question or to grant him a lease or easement. There are no genuine issues of material fact as to any of the claims, and the United States is entitled to judgment in its favor as a matter of law.

## I. FACTS

The United States owns a 13–acre parcel of land in Needham, Massachusetts, known as "Tract 1712," having acquired it primarily for flood control purposes as a part of the Charles River Natural Valley Storage Project (the "Project"). The U.S. Army Corps of Engineers, New England Division (the "Corps"), manages the land for the United States.

Grabler owns land at 180 Standish Road, Needham, abutting Tract 1712. In September 27, 1988, Grabler asked the Corps to grant him either a lease or an easement covering approximately 9,100 square feet of Tract 1712 so that he could build a tennis court on that land. The Acting Chief of the Corps Real Estate Division responded that the Corps would not grant him any interest in the land.

In the summer of 1991, Grabler planned and built the tennis court anyway, albeit on a slightly different section of land than that mentioned in his 1988 request. About 3,586 square feet of Grabler's tennis court, roughly half its total area, lie within Tract 1712. Grabler admits that he constructed the tennis court partially on Tract 1712, although he insists that he did so inadvertently. Grabler also concedes that he had obtained no license or authorization from any state or local agency or conservation commission with regard to the tennis court, that he removed a number of trees and shrubs as well as three truckloads of soil in the process, and that he introduced material onto the land for the tennis court surface.

In September, 1993, having discovered the encroachment, the Corps questioned Grabler about it. He represented to the Corps at least once that he had received approvals from the Needham Conservation Commission, although in fact he had not. Grabler also tried to persuade the Corps to let him keep his tennis court, offering to swap other land for it or to purchase the land and grant the United States an easement over it. The Corps has consistently rejected such proposals on the ground that compromising on the tennis court would "jeopardize the purpose" of the Project and "create unfavorable precedents regarding other fee-owned areas in the basin."

## II. DISCUSSION

Summary judgment is appropriate wherever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c); *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995). The nonmoving party, here Grabler, is entitled to all reasonable inferences that may be derived from the evidence submitted, and the evidence must be viewed in the light most favorable to him. *Woodman*, 51 F.3d at 1091.

## A. *The Government's Claims*

The government's complaint has two counts. Count I alleges a continuing trespass by Grabler on property belonging to the United States. Count II sets forth a claim that Grabler's construction of the tennis court violated a prohibition against unauthorized structures in water resource development projects under Part 327 of Title 36 of the Code of Federal Regulations.[1]

■ The parties disagree about whether federal or state law governs the trespass issue. This Court has jurisdiction over the case by virtue of 28 U.S.C. § 1345, which grants district courts original jurisdiction over all civil actions commenced by the United States. Neither § 1345 itself nor subsequent case law has established a uniform rule of decision for cases where the United States is a plaintiff, although the Supreme Court has held in this context that "specific aberrant or hostile state rules do not provide appropriate standards for federal law." *North Dakota v. United States*, 460 U.S. 300, 317–19, 103 S.Ct. 1095, 1105–06, 75 L.Ed.2d 77 (1983); *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 595–96, 93 S.Ct. 2389, 2398–99, 37 L.Ed.2d 187 (1973); *see also Clearfield Trust Co. v. United States*, 318 U.S. 363, 366–69, 63 S.Ct. 573, 574–76, 87 L.Ed. 838 (1943); *United States v. Belanger*, 598 F.Supp. 598, 603–04 (D.Me.1984). The United States suggests that federal common law might control this case, noting the important federal interest in uniform regulation of federally-owned wetlands. On the other hand, Grabler insists that Massachusetts law applies. He points out that Tract 1712 is wholly in Massachusetts, that under 36

C.F.R. § 327.0 state and local regulations "remain in effect where applicable" on Corps water resource projects, and that the United States is acting in its capacity as landowner and proprietor rather than regulator in requesting that he remove the tennis court. In the end, however, even assuming that the United States is "a mere property owner" in this case and has no other governmental interest at stake, *cf. United States v. California*, 332 U.S. 19, 29, 67 S.Ct. 1658, 1663, 91 L.Ed. 1889 (1947), so that reliance on state law is appropriate, Grabler loses.

■ There is no material factual dispute that Grabler built a tennis court that lies partly on land owned by the United States. That encroachment constitutes a trespass. *See Restatement (Second) of Torts* § 158 (1965). Under Massachusetts law, "a landowner is ordinarily entitled to mandatory equitable relief to compel removal of a structure significantly encroaching on his land...." *Peters v. Archambault*, 361 Mass. 91, 278 N.E.2d 729, 730 (1972). "[T]he government has, with respect to its own lands, the rights of an ordinary proprietor, to maintain its possession and to prosecute trespassers." *Camfield v. United States*, 167 U.S. 518, 524, 17 S.Ct. 864, 866, 42 L.Ed. 260 (1897). The only serious question is whether any special circumstances exist to justify overriding the landowner's ordinary entitlement to an injunction. This question is addressed in the remedies section of this memorandum. So far as the claims themselves are concerned, the facts of the continuing trespass and the violation of the regulatory prohibition against unauthorized structures are undisputed.

## B. *Affirmative Defenses*

Grabler raises two affirmative defenses to the trespass claim, neither of which has merit. First, he argues that the Massachusetts law regarding "great ponds" provides him with a complete defense to the government's actions. Massachusetts defines a great pond as "a natural pond the area of which is

---

**1.** 36 C.F.R. § 327.20 provides in relevant part that "[t]he construction, placement, or existence of any structure ... of any kind ... upon, in or over the project land or waters is prohibited unless a permit, lease, license, or other appropriate written agreement has been issued by the District Engineer."

twenty acres or more." Mass.Gen.Laws Ann. ch. 131, § 1 (West 1991). Subject to certain exceptions for local regulation of hunting, fishing, and boating and for water-supply needs, all great ponds are "public for the purpose of hunting or boating thereon" and are "open to all inhabitants of the commonwealth for fishing purposes." Mass.Gen. Laws Ann. ch. 131, § 45 (West 1991). The law has its origins in the Colony Ordinances of 1641–47, which devoted to public use as commons all ponds that contained more than ten acres of water and that had not been appropriated to private use before 1647. *Butler v. Attorney Gen.*, 195 Mass. 79, 80 N.E. 688, 689 (1907); *West Roxbury v. Stoddard*, 89 Mass. 158, 165–71 (1863). The colonists considered large, freshwater ponds too vital to their survival for any individual to own them and so made them common areas in which all "shall have free fishing and fowling." Deborah K. Paulus, *Reflections on Takings: The Watuppa Ponds Cases*, 17 W.New Eng.L.Rev. 29, 35–36 (1995).

■ Grabler contends that Tract 1712 is part of a great pond and that the United States can thus have no ownership rights in that property and cannot maintain a trespass action against him. Putting aside whether, under the Supremacy Clause, U.S. Const. Art. VI, cl. 2, and the Supreme Court cases that make federal law the rule of decision where state law is "hostile," federal regulations trump any ownership limitations created by state law, Grabler's great pond theory is specious. The land on which the tennis court sits is clearly not a great pond within either the letter or ˌhe spirit of the Massachusetts statute. A great pond must encompass twenty acres of water. Mass.Gen.Laws Ann. ch. 131, § 1. Even if, as Grabler claims, the area was once part of an ancient waterbody called Lake Charles and is now part of a flood plain, the portion of Tract 1712 currently covered by a tennis court is not a sitting body of water as envisioned by the laws concerning great ponds. In sum, the "great pond" defense holds no water.[2]

■ Second, Grabler raises the defense of equitable estoppel. Grabler asserts that through its annual surveys of Tract 1712, the government knew or should have known about his tennis court earlier and that this knowledge equitably estops it from requesting him to remove the completed construction. Equitable estoppel was long thought not to lie against the United States, and not until 1961 did the Supreme Court even suggest in dicta that such an argument might ever prevail. *See Office of Personnel Management v. Richmond*, 496 U.S. 414, 419–21, 110 S.Ct. 2465, 2468–70, 110 L.Ed.2d 387 (1990); *see also Phelps v. Federal Emergency Management Agency*, 785 F.2d 13, 16–17 (1st Cir.1986) (noting that the "Supreme Court … has consistently refused to apply the equitable estoppel doctrine against the government, no matter how compelling the circumstances"). In *Richmond*, the Court held that the conduct of a federal employee did not estop the United States from denying benefits to an individual where the employee had provided erroneous information regarding disability benefits, information on which the individual had relied. 496 U.S. at 417–18, 110 S.Ct. at 2467–68.

■ Under Massachusetts law, a successful assertion of equitable estoppel requires: (1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; (3) and detriment to such person as a consequence of the act or omission.

---

**2.** Although more need not be said, Grabler's great-pond argument additionally fails because the statutes do not protect any right to build structures in a great pond. The statutes concerning great ponds expressly permit hunting, fishing, and boating, and in the context of discussing predecessor statutes to the current great pond law, the Massachusetts Supreme Judicial Court has held the statutory list to be illustrative rather than exclusive. *Butler*, 80 N.E. at 689

(citing cases). Thus, it has permitted boating and ice skating on the great ponds. See *Fay v. Salem and Danvers Aqueduct Co.*, 111 Mass. 27 (1874). Tennis is, like ice skating, a form of recreation, but it is not typically played in large bodies of water. Moreover, other statutes explicitly forbid construction of permanent structures in great ponds without special permission. *See* Mass.Gen.Laws Ann. ch. 91, §§ 19, 23 (West 1993).

*Boylston Dev. Group, Inc. v. 22 Boylston St. Corp.*, 412 Mass. 531, 591 N.E.2d 157, 163 (1992) (citations and internal quotations omitted). Here, Grabler was not misled into believing the Corps had tacitly approved his construction of the tennis court. On the contrary, he knew the Corps had expressly denied him permission to do so. The facts of this case give no basis for an estoppel against any landowner, let alone the United States.

## C. *Counterclaim*

Taking a different tack, Grabler counterclaims that the Corps' failure to grant him a lease was arbitrary and capricious and contrary to law. Grabler maintains that his tennis court fully complies with the federal regulations regarding the Project and that the United States has no principled basis on which to object to his actions. Grabler further asserts that once he became aware of the encroachment he offered to rectify the situation in several ways, each of which should have satisfied the Corps. Instead, he insists, the Corps rejected these solutions primarily because he lives in an affluent neighborhood.

■ Although the ground is unstated in his counterclaim, Grabler apparently challenges the Corps' action as a final agency decision under the Administrative Procedure Act, 5 U.S.C. § 706. Under this Act, a court may set aside an agency decision only if that decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. § 706(2)(A) (West 1977); *see Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1445 (1st Cir.1992). In determining whether a decision complies with this standard, a court considers:

> whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. [A reviewing] court is not empowered to substitute its judgment for that of the Corps.

*Id.* at 1445–46 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)). A court reviews "first and foremost" the administrative record before it in making this assessment; it may not ordinarily look to or create a new evidentiary record. *Valley Citizens for a Safe Env't v. Aldridge*, 886 F.2d 458, 460 (1st Cir.1989); *see also Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (noting that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court").

■ Federal law vests the Secretary of the Army, acting through the Army Corps of Engineers, with the authority "to grant leases of lands, including structures or facilities thereon, at water resource development projects for such periods, and upon such terms and for such purposes as he may deem reasonable in the public interest...." 16 U.S.C.A. § 460d (West 1992). The Corps manages Tract 1712 pursuant to the Charles River Natural Valley Storage Project, Master Plan for Recreation Resources Development, Design Memorandum No. 4 (1984) ("Master Plan"). After considering Grabler's request for a lease, the Corps concluded that the construction of a tennis court was inconsistent with the purpose of the Project as stated in the Master Plan. As the Corps wrote Grabler, the purpose of the Project is "to preserve the land in its natural state in order to prevent any alteration of its drainage characteristics." The Corps thought that granting Grabler his request would "undermine" that purpose. Nothing in the administrative record proves that logic unreasonable.

Grabler notes that the regulations also make it "the policy" of the Corps "to manage the natural, cultural and developed resources of each project in the public interest, providing the public with safe and healthful recreational opportunities while protecting and enhancing these resources." 36 C.F.R. § 327.1(a) (1995). That language, however, does not mandate permission to build a tennis court. Indeed, the Master Plan's Summary states that "[l]ocal communities have also expressed a general desire to minimize active recreation" and proposes restricting

recreational development in the Project to "layout and marking of trails, designation of canoe launching sites, provisions for limited parking in bordering upland areas, and installation of project signs for identification and public use regulation." *See* Master Plan at 22 (describing resource use objectives). Grabler's tennis court does not and would not fall into these categories.[3] Moreover, as the United States points out, Grabler's original proposal did not provide assurance, or even state, that the tennis court would be available to the public at large and thus be "in the public interest." Those assessments are reasonable. They also justify the Corps' reluctance to compromise with Grabler after he built the tennis court anyway.

█ Moving one step further, Grabler contends that the Corps denied him permission to build and refused to entertain any compromise once he had built solely because he lives in an affluent neighborhood. He points to the following "smoking gun" evidence of bias against affluent people, found in a memorandum prepared by the Corps in preparation for this litigation:

> Throughout this entire procedure Mr. Grabler has never recognized the fact that total restoration of the area is the only solution acceptable to the United States. At the October 1993 meeting and as evidenced by his later attempts to convince the Corps to allow him to maintain this tennis court he has clearly indicated that he feels that because he built the court at great expense he should be allowed to keep it.

> Had this particular encroachment occurred in a less sensitive area, for example, on the uplands at one of our flood control pro-

jects, the Corps would have at least considered working out some sort of equitable arrangement allowing the trespasser to maintain his encroachment and providing for compensation to the United States.

> However, in the case of the Charles River Natural Valley Storage Area we do not feel that we have that luxury. Preservation of wetlands has the very highest regional and national priority at the Corps of Engineers. The precedent of negotiating a compromise with Grabler on this sensitive issue has the very real potential to be devastating. There are hundreds of abutters to the project, for the most part in more affluent areas, and there is no telling how many of these abutters do not have quite enough room on their lots for a swimming pool or a tennis court, or a putting green or something else. The United States is simply not in a position to compromise in any way in this case.

Grabler sees this as nothing less than class warfare, the Corps denying him his tennis court on the basis of his perceived wealth in violation of the Constitution's guarantee of equal protection under the laws.

This Court is unable to discern anything sinister in the Corps' conduct. The Corps decided that Grabler's proposed project would not be consistent with the Project and denied him permission to proceed with it. When Grabler pursued his project anyway, the Corps determined that its position had not changed. The Corps recognized that even if Grabler's lone project would not cause too much damage, it would set a precedent that could devastate the Project by encouraging others to build first and ask questions

---

3. Grabler also referred to 16 U.S.C. § 4601 and its attendant regulations in his counterclaim, although he did not mention them in his memorandum opposing summary judgment on the counterclaim. Whether this omission was considered or inadvertent, § 4601 has no bearing on the land in question. Grabler's references in his memorandum to the Corps' Real Estate Handbook, the collection of rules applying to Corps-controlled land in general, ER 405–1–12 (parts of which may be found at 32 C.F.R. § 644), are equally irrelevant in that they do not explain away the Master Plan or the Corps' reliance on it. The fact that the Corps lets private individuals have leases for recreation purposes on some

of its lands does mean that Tract 1712 is necessarily amenable to such a lease. It certainly does not mean that the Corps was required to let him lease the land for his tennis court.

Similarly, the sources Grabler mentions to show that Massachusetts needs tennis courts, that the Project should be open to tennis courts, and that the neighbors like his court do not present a serious challenge to the Corps' decision. This Court's review of the administrative record does not reveal that the Corps ignored important facts in denying Grabler a lease or some other opportunity to preserve his tennis court. *Valley Citizens*, 886 F.2d at 460.

later. That decision constitutes rational decision making, not unconstitutional discrimination.

## D. *Remedies*

■ Grabler argues that even if he did trespass on the United States' property and the United States properly denied him permission to maintain his court both before and after the fact, the United States should receive only monetary damages and not injunctive relief. He argues that his infringement was *de minimis* at most and that the government's requested remedy—the removal of the tennis court and restoration of vegetation—represents extreme overkill and a waste of money.

The Massachusetts Supreme Judicial Court ("SJC") long ago outlined the basic principles concerning the appropriate remedy following a trespass:

> In general, where a defendant has gone on without right and without excuse in an attempt to appropriate the plaintiff's property, or to interfere with his rights, and has changed the condition of his real estate, he is compelled to undo, so far as possible, what he has wrongfully done affecting the plaintiff and to pay damages. In such a case the plaintiff is not compelled to part with his property at a valuation, even though it would be much cheaper for the defendant to pay the damages in money than to restore the property. The principal reason for this is that which lies at the foundation of the jurisdiction for decreeing specific performance of contracts for the sale of real estate.

*Lynch v. Union Instit. for Sav.*, 159 Mass. 306, 34 N.E. 364 (1893). Subsequent cases have consistently adhered to that principle. *See Peters*, 278 N.E.2d at 730 (collecting cases).

■ Massachusetts courts do recognize that compelled removal of an encroaching structure from a plaintiff's land is not always the most equitable remedy. *Levi v. Worcester Consol. St. Ry. Co.*, 193 Mass. 116, 78 N.E. 853 (1906). A court should not grant such a remedy

when it appears that it will operate inequitably or oppressively, nor when it appears that there has been unreasonable delay by the party seeking it in the enforcement of his rights, nor when the injury complained of is not serious or substantial and may be readily compensated in damages, while to restore things as they were before the acts complained of would subject the other party to great inconvenience and loss.

*Id.* (quoting *Starkie v. Richmond*, 155 Mass. 188, 195–96, 29 N.E. 770 (1892)). *Accord Strauss v. Oyster River Condominium Trust*, 417 Mass. 442, 631 N.E.2d 979, 984–85 (1994); *Ottavia v. Savarese*, 338 Mass. 330, 155 N.E.2d 432 (1959); *Gray v. Howell*, 292 Mass. 400, 198 N.E. 516, 517 (1935) (noting that "the rule ... does not require the court to inflict unnecessary and unconscionable injury and loss upon a defendant who, without wrongful intent, is unfortunate enough to discover that his building is a little over his neighbor's line, if the substantial rights of the plaintiff can be fully protected without doing so"); *Loughlin v. Wright Mach. Co.*, 273 Mass. 310, 173 N.E. 534, 535 (1930); *Lynch*, 34 N.E. at 364. But cases in which an injunction is not appropriate are "exceptional." *Strauss*, 631 N.E.2d at 984; *Geragosian v. Union Realty Co.*, 289 Mass. 104, 193 N.E. 726, 728 (1935).

There are no such exceptional circumstances in this case. In *Strauss* and *Lynch*, the Supreme Judicial Court ("SJC") did identify situations where despite a proven trespass, the landowner was not entitled to an injunction, but neither of their scenarios approximates Grabler's conduct. In *Strauss*, a development plan misled condominium unit owners to believe that they could expand their units into a common area, the unit owners had proceeded in good faith reliance on the plan, the plaintiffs knew of the unit owners' plans, did not object to the plans, and waited until the expansions were largely completed before filing suit. Here, the Corps had explicitly informed Grabler that he did not have permission to build on Tract 1712. In *Lynch*, the SJC limited a plaintiff to his legal remedies where the plaintiff only leased the encroached land and had less than a year remaining on the lease. Here, the

United States owns Tract 1712 in fee and considers it part of an important resource protection project.[4]

Nor can Grabler's incursion be considered *de minimis*. The SJC held in *Loughlin* that a defendant did not have to remove a new sewer that encroached six inches onto the plaintiff's land, noting that the unintentional trespass, as small and facially imperceptible as it was, did not deprive the plaintiff of any use or enjoyment of his land. *Loughlin*, 173 N.E. at 535; *see also Tramonte v. Colarusso*, 256 Mass. 299, 152 N.E. 90 (1926) (unintentional encroachment by bulge of a building on one eighth to one quarter of an inch on the plaintiff's property held to be *de minimis*). But in *Goldstein v. Beal*, 317 Mass. 750, 59 N.E.2d 712 (1945), the defendant constructed a fire escape that extended less than four feet over the plaintiff's property line, and the Court held that "[t]here is nothing in the record to take the present case out of the general rule." *Id.*, 59 N.E.2d at 717.

In light of Grabler's unjustified, indisputable and substantial trespass, injunctive relief is entirely appropriate. The United States has proposed a plan requiring the physical removal of the tennis court and the replanting of the land affected by the construction. In opposing the plan, Grabler raises some issues regarding how much he should have to do to restore the land. Grabler disputes by way of an expert affidavit that any of the portion of Tract 1712 on which the tennis court now sits was wetland prior to the court's construction. Thus, Grabler asserts, none of the government's proposed wetland planting and reseeding should be done. Grabler similarly contends that the government's requirement that he plant shrubs with a minimal rootball of two gallons is excessive.

In its reply brief, the United States recognizes this potential for contested factual issues and suggests its willingness to forgo these requirements so long as Grabler guarantees the viability of all replanting for one year. Whether the land now occupied by the tennis court was wetland is an historical fact on which the parties disagree. On that question, there seems to be a disputed issue of fact, but the government's concession makes the dispute immaterial. In contrast, the problem of rootball size speaks only to how quickly the government is entitled to have its land restored to its natural state and to what will better ensure the effectiveness of that remedy. It does not concern what was there before and must be replaced. The soundness of a facet of injunctive relief of this nature lies within the discretion of this Court.

For the foregoing reasons, game, set and match go to the government, and the Court ORDERS and ADJUDGES as follows:

1. The plaintiff United States' motion for summary judgment on its claims against the defendant Peter Grabler is GRANTED.

2. The United States' motion for summary judgment on Grabler's counterclaim is GRANTED.

3. Grabler is permanently enjoined from entering, or authorizing or permitting others to enter, upon the land of the United States known as Tract 1712 in Needham, Massachusetts, except as may be necessary to comply with this Order, unless expressly authorized in writing by the United States Army Corps of Engineers.

### REMOVAL AND RESTORATION PREPARATION

4. Grabler shall submit a schedule of work and planting accompanied by detailed drawings developed pursuant to and in accordance with specifications listed in paragraphs

---

4. In *Goulding v. Cook*, 38 Mass.App.Ct. 92, 645 N.E.2d 54 (1994), a Massachusetts state appellate court upheld a lower court's denial of injunctive relief where the defendants had knowingly placed a septic tank on the plaintiffs' property because the defendants had nowhere else to put it, the tank was necessary to the defendants' maintaining their property, and tank's underground location did not noticeably affect the plaintiffs' enjoyment of the land. The opinion, issued over a strong dissent, rested primarily on the appellate court's view that the court below had not abused its discretion in denying the injunction, not that it was necessarily correct in doing so, *id.*, 645 N.E.2d at 56, and so does not suggest a different outcome in the present case. Furthermore, the Supreme Judicial Court has granted review in the case, *see Goulding v. Cook*, 419 Mass. 1110, 647 N.E.2d 721 (1995), rendering its value as persuasive authority more tentative.

5 through 17 of this Order to the Corps for its review, comment and approval within sixty days of the date of the Court's entry of final judgment. The detailed drawings shall clearly define the work area that is the subject of these specifications. The Corps shall not unreasonably withhold approval, but such approval may include additional terms and conditions consistent with these specifications.

5. Prior to commencement of any work on the site, Grabler shall file a Notice of Intent with the Needham Conservation Commission. Work shall not commence until a copy of the Order of Conditions is submitted to the Corps Point of Contact. Grabler shall exercise diligence in obtaining the Order of Conditions.

6. At least seven days prior to the start of any removal or restoration work, a notice of intent to start such work shall be given in writing to the Corps Point of Contact. At that time the Corps Point of Contact will determine if a Corps representative will meet with Grabler's contractor.

7. Until and unless otherwise specified by the Corps, the Corps Point of Contact shall be the Project Manager of the Charles River Natural Valley Storage Area. The Point of Contact for Peter Grabler shall be Peter Grabler.

## REMOVAL AND RESTORATION REQUIREMENTS

8. Grabler shall have the portion of the tennis court located on Tract 1712 removed within ninety days of final approval by the Corps of the restoration plan. All restoration activities shall be commenced immediately following removal of the tennis court and shall be completed within one year of the date the Corps gives its final approval to the restoration plan.

9. Grabler will have hay bales staked at the downslope end of the work area to form a solid barrier to sediment. The barrier shall extend twenty feet beyond the work zone on each end.

10. Grabler will have the portion of the tennis court, net chain link fence, and any and all associated structures or devices encroaching on Tract 1712 removed. This removal shall encompass any subsurface structures, including, but not limited to a sprinkler system, if any.

11. All materials previously caused to be deposited in the work area by Grabler including, but not limited to clay, sand and gravel shall be removed down to the highest natural soil horizon, unless the Corps, in its sole discretion, authorizes otherwise. A Corps designated representative shall inspect the excavation to verify that a suitable depth has been reached.

12. Grabler shall have the surface of the work site restored to pre-construction contours. Contours shall match the existing grade of the adjacent undisturbed areas. Grading of the area shall be inspected and approved by a Corps representative before vegetation is re-established.

13. The entire disturbed area shall be planted with a general conservation mix. The wet mix shall be planted either in the spring (prior to June 1) or in the fall (after October 1) and subsequently planted with the following tree and shrub species: red oak, red maple white pine (minimum 4 of each species). Minimum tree size shall be 1" caliper or 8' high from soil line. Shrubs shall have a minimum rootball size of 2 gallons. All trees, shrubs and other vegetation including seed mixtures shall be planted in accordance with a landscaping plan approved by the Corps.

14. Plants shall be guaranteed viable for a period of one year from completion of all planting as described above. Grabler shall have all dead plants replaced by the next planting season at no cost to the government and in strict accordance with the original approved landscaping plan. To assure their viability all plantings shall be during either spring (March 21—June 1) or fall (October 1—November 1).

15. During all inspection, construction and other activities related to this restoration effort, Grabler shall grant the Corps and its representatives a right of entry from Standish Road through his property at 180 Standish Road to the work site for the purpose of

monitoring and ensuring compliance with this Order.

16. Upon successful completion of all removal and restoration activities, the Corps shall certify to Grabler that all above conditions have been met.

17. This Court shall retain jurisdiction of the case for the purpose of enforcing the terms of this Order.

SO ORDERED.