STELLA XIFARAS & another,[1] trustees,[2] vs. LOUIS ANDRADE.[3]

No. 01-P-1525.

Bristol. September 12, 2003. - November 3, 2003.

Present: MASON, BERRY, & DOERFER, JJ.

*Condominiums,* Common area, Master deed. *Real Property,* Condominium.

The doctrines of the law of the case and res judicata did not preclude the judge in an action among condominium unit owners from ruling that the defendant had not validly obtained any exclusive right to use the basement and portico areas of a condominium in which he owned a unit. [794]

In an action brought by two trustees of a condominium trust against the defendant, a unit owner, a Superior Court judge erred in declining to issue a mandatory injunction directing the defendant to cease his encroachment of the portico area of the condominium, which the defendant had enclosed and altered, and to return the area to its former condition, in accordance with the master deed for the condominium, where an injunction should have issued to prevent what constituted a significant ongoing encroachment on the property of others; where the record failed to establish that the costs the defendant would incur in removing his encroachment into the portico area would be greatly disproportionate to the injury to the other owners from its continuation; where nothing in a prior judgment transferred any interest in the basement or portico areas to the defendant; and where it did not appear from the record that any trustees who were independent of the defendant had unreasonably delayed in seeking to enforce the terms of the master deed, or that the defendant had suffered any prejudice as a result of any such delay [794-797].

CIVIL ACTION commenced in the Superior Court Department on February 27, 1998.

The case was heard by *Vieri Volterra,* J.

*Anthony C. Savastano* for the plaintiffs.

*Thomas J. Canavan* for the defendant.

MASON, J. The plaintiffs, Stella Xifaras and Susan Xifaras,

[1]Susan Xifaras.

[2]Of the Pond Meadow Condominium Trust.

[3]Individually and as trustee of the Atlantic Manor Realty Trust.

acting as trustees of the Pond Meadow Condominium Trust (condominium), appeal from a judgment entered in the Superior Court. The judgment declared that the defendant, Louis Andrade, trustee of the Atlantic Manor Realty Trust, had unlawfully encroached into the common areas of the condominium by removing certain walls and taking certain other actions in the basement area under units 1 and 4 of the condominium, and also by enclosing the porch area under a portico outside unit 1, and using it as a kitchen and dining area for unit 1, which Andrade owned. The judgment ordered Andrade "to restore the basement area to the condition it was in prior to his invasion," but it did not order him to take any similar action with respect to the portico area. Rather, with respect to the portico area, the judgment ordered that the master deed and other condominium documents be amended to reflect its "annexation" into unit 1.

The plaintiffs claim on appeal that, having ruled that Andrade's enclosure of the portico area was unlawful, the judge abused his discretion in failing to order Andrade to restore the portico area to its original condition. Andrade, on the other hand, contends that the doctrines of law of the case and res judicata precluded the judge from ruling that Andrade did not have an exclusive right to use the basement and portico areas, and in any event, the judge was within his discretion in refusing to order him to remove the improvements to the portico area. We conclude that the judge did not have discretion to decline to order Andrade to restore the portico area to the condition it had been in prior to his encroachment, and we remand for the entry of a new judgment incorporating such an order.

*Background.* The condominium consists of six units in a stone mansion overlooking Westport Harbor. A master deed for the property was recorded in 1984, thereby subjecting the property to G. L. c. 183A. See G. L. c. 183A, § 2.

Section 9.3 of the master deed provides that, in order to preserve the "architectural integrity" of the condominium building and its units, "no exterior change, addition, structure, projection, decoration or other feature shall be erected or placed upon or attached to any Unit or any part thereof . . . without the written permission of the Trustees of Pond Meadow Condominium Trust upon such terms and conditions, if any, as they, in

their reasonable discretion, shall determine." Section 10.3 of the master deed further provides as follows:

> "No instrument of amendment which alters the percentage of the undivided interest to which any Unit is entitled as set forth in Exhibit C shall be of any force or effect unless the same has been signed by the owners of all the Units and said instrument is recorded as an Amended Master Deed."

In March, 1993, Emile Morad, acting as agent for Stella Xifaras (Stella) and Barbara Xifaras (Barbara), sold unit 1 in the condominium to Andrade, as trustee of the Atlantic Manor Realty Trust. The sale was accomplished in accordance with the terms of a purchase and sale agreement that a corporation owned by Stella and Barbara, Stellax, Inc., previously had entered into with Andrade. The purchase and sale agreement provided, among other things, that, if Stellax had the right to do so, then it would "redefine" the common area of the condominium so that both the basement area directly below unit 1 and the portico area, would become part of unit 1. More specifically, the agreement provided as follows:

> "If Stellax, Inc. has the right to redefine the common area, then Stellax, Inc. will redefine the common area so that:
>
> "a.) the basement area directly below condominium unit # 1 will become part of condominium 1 for the purpose of installing separate utilities for the bowling area;
>
> "b.) the area directly abutting the southside door to unit # 1, which contains a roofed structure extended from unit # 1, will become a part of unit # 1 at the sole expense of the Buyer."

The agreement also provided that acceptance of a deed by the buyer "shall be deemed to be performance and discharge of every agreement and obligation herein contained or expressed except as are, by the terms hereof, to be performed after the delivery of said deed."

Promptly after purchasing unit 1, Andrade enclosed the portico area and began using it as a kitchen and dining area for his unit. He also removed certain walls and structures in the unit 1 basement area as well as the unit 4 basement area. At no time, however, did Andrade obtain the condominium trustees' written permission for any of these actions or an amendment to the master deed removing either of these areas from the condominium's common areas. Nor was it determined that Stellax had the right to redefine the common areas so as to permit these actions by Andrade.

In 1994, Stella and Barbara commenced an action in Superior Court against Morad, Andrade, and an entity controlled by Morad, Investment and Leasing Co., Inc. (I & L), seeking to set aside Morad's purported sale to Andrade of certain units in the condominium other than unit 1. Andrade filed a counterclaim alleging that Stella had agreed to cause the master deed to be amended to incorporate the basement and portico areas into unit 1, and seeking specific performance of that alleged agreement. Following a jury-waived trial spanning twenty-two days, a Superior Court judge on October 31, 1996, entered a judgment in favor of the plaintiffs on the bulk of their claims. The judgment also provided, however, that Stella and Barbara would be deemed to have exercised "all their past and future voting rights" in favor of the transfer to unit 1 of the exclusive use of the basement and portico areas. More specifically, the judgment provided:

> "Stella Xifaras and Barbara Xifaras, as owners of Unit Nos. 2, 5 and 6 and and as the former owners of Unit No. 4 in the Pond Meadow Condominium are deemed to have exercised all their past and future voting rights as unit owners in favor of the transfer to Unit No. 1 of the Pond Meadow Condominium of all rights to the exclusive use of the basement beneath the first level perimeter of Unit No. 1 and the exclusive use of the porch area directly abutting the southside door of Unit 1 beneath the portico, including the right to enclose and to maintain said area as it is presently enclosed."

Andrade subsequently took the position that this judgment

gave him exclusive use of the basement and portico areas. Accordingly, Stella, acting individually and as trustee of the condominium trust, filed a motion for clarification of the judgment. In response to this motion, the judge on July 23, 1997, entered a further order providing that its prior judgment did not "purport to convey or to order conveyance to [Andrade] of any title or interest in any basement area at the [condominium]," and that the judgment "does not affect the interests of the Condominium or of any unit owner regarding the said basement, except to the extent that it limits the past and future voting rights of Stella Xifaras and Barbara Xifaras." On May 20, 1998, the judge, in response to a further motion by Stella, entered a further order amending the prior judgment to provide that it did not affect the interests of the condominium or any unit owner regarding the "basement *or portico*" (emphasis added) except to the extent that it "limits the past and future voting rights of Stella Xifaras and Barbara Xifaras." We subsequently affirmed the judgment on appeal. See *Xifaras* v. *Investment & Leasing Co.*, 52 Mass. App. Ct. 1108 (2001).

In the meantime, Andrade continued to perform work in the basement area, including cutting a hole in the ceiling of that area to begin the installation of a spiral staircase, and he also continued to use the portico area as a kitchen and dining area. Accordingly, Stella and Susan Xifaras, acting as trustees of the condominium trust, commenced the present action in February, 1998, seeking a declaration that the basement and portico areas were and are common areas of the condominium, and also an injunction requiring Andrade to restore both areas to the conditions they were in prior to his unlawful actions. Following a three-day trial before a second Superior Court judge that included a viewing of the condominium, the judge ruled that nothing in the judgment entered by the first judge, or in any action taken by the trustees or unit owners, had altered the common areas of the condominium in the manner required by the terms of the master deed, and also by G. L. c. 183A, § 5(*b*), or had given Andrade the exclusive right to use either the basement or the portico area.

Having reached the foregoing conclusion, the judge ordered that an injunction should issue ordering Andrade to restore the

basement area to the condition it was in prior to his alterations. On the other hand, the judge explicitly declined to exercise his equitable powers to order Andrade to restore the portico area to its prior condition. Citing *Strauss* v. *Oyster River Condominium Trust*, 417 Mass. 442 (1994), the judge stated,

> "After considering the circumstances of Andrade's encroachment onto the portico, namely (a) the judgment by Justice Hely in previous litigation; (b) the trustees not acting for nearly five years to enforce the provisions of the master deed, thus permitting Andrade to construct a substantial addition to his apartment that is now his dining room; and (c) removal of the addition would be oppressive and inequitable when balancing the rights of the other unit owners against the substantial damage that would occur to Andrade without any real countervailing benefit to the other unit owners, I conclude within my discretion that it would be inequitable to order the removal of Andrade's addition upon the portico."

1. *Preliminary issues.* We reject Andrade's contention that the doctrines of law of the case and res judicata somehow precluded the second judge from ruling that he had not validly obtained any exclusive right to use the basement and portico areas. The second judge did not "modify, alter, change or overrule the work of another trial judge," as Andrade claims. Rather, he merely construed the judgment entered by the first judge in the same manner as the first judge himself construed it. The second judge did not "overrule" the first judge. The interpretation of a judgment is a proper function of a court and does not implicate the doctrines of law of the case or res judicata. See *Peterson* v. *Hopson*, 306 Mass. 597, 603 (1940); *Heacock* v. *Heacock*, 402 Mass. 21, 25 (1988).

2. *Failure to order removal of portico improvements.* "In Massachusetts a landowner is ordinarily entitled to mandatory equitable relief to compel removal of a structure significantly encroaching on his land, even though the encroachment was unintentional or negligent and the cost of removal is substantial in comparison to any injury suffered by the owner of the lot upon which the encroachment has taken place." *Peters* v. *Archambault*, 361 Mass. 91, 92 (1972). Such relief has been denied

only in rare and exceptional cases "where the unlawful encroachment has been made innocently, and the cost of removal by the defendant would be greatly disproportionate to the injury to the plaintiff from its continuation, or where the substantial rights of the owner may be protected without recourse to an injunction, or where an injunction would be oppressive and inequitable." *Id.* at 93, quoting from *Ottavia* v. *Savarese*, 338 Mass. 330, 336 (1959). See *Goulding* v. *Cook*, 422 Mass. 276, 277-278 & n.3 (1996).

Here, it does not appear from the record, or from the judge's findings, that any facts were established warranting an exception to the general rule that an injunction should issue to prevent a significant ongoing encroachment on another's property. To the contrary, unlike the situation existing in *Strauss* v. *Oyster River Condominium Trust*, 417 Mass. at 452, relied on by the judge, it appears from the record that Andrade could not have acted "innocently," or in reasonable reliance on the terms of the master deed, when he enclosed the portico area and began using it as a kitchen and dining area. Not only did the terms of the master deed prohibit any such unilateral action by a unit owner but, as we have previously noted, when Stella and Barbara brought the initial litigation against Andrade, Morad, and I & L, seeking to set aside Morad's purported sale to Andrade of certain units in the condominium other than unit 1, Andrade filed a counterclaim alleging that Stella had agreed to cause the master deed to be amended to incorporate the basement and portico areas into unit 1, and seeking specific performance of that alleged agreement.[4] Hence, Andrade must have known that such an amendment to the master deed was necessary before he incorporated the portico area into unit 1 in the manner he did. Contrast *ibid.*

---

[4]The only apparent basis for this counterclaim was the purchase and sale agreement Stellax had entered into at the time unit 1 was sold to Andrade. As set forth above, however, that agreement did not unequivocally provide that Stellax would cause the master deed to be amended. Rather, it provided only that "if" Stellax had the right to redefine the common area, then it would do so in the manner described in the agreement. The agreement also provided that acceptance of a deed by the buyer "shall be deemed to be performance and discharge of every agreement herein contained or expressed except as are, by the terms hereof, to be performed after the delivery of such deed."

Moreover, nothing in the record established that the costs Andrade would incur in removing his encroachment into the portico area would be greatly disproportionate to the injury to the other owners from its continuation. Indeed, Andrade presented no evidence at all as to what such removal would cost. On the other hand, the plaintiffs presented evidence that the portico area was the only portion of the building's veranda that was covered by a roof and from which Westport Harbor and its entrance could be viewed. Hence, its enclosure by Andrade deprived the other unit owners of a significant benefit of their ownership and also interfered with the architectural integrity of the building which the master deed was intended to preserve for all unit owners.[5] Andrade made no showing that those rights could be protected other than by an injunction.

The judge nevertheless declined to issue the requested injunction against Andrade's ongoing encroachment of the portico area, relying principally on the judgment entered in the initial litigation brought by Stella and Barbara acting in their individual capacities, and also on "the trustees not acting for nearly five years to enforce the provisions of the master deed, thus permitting Andrade to construct a substantial addition to his apartment that is now his dining room." As the judge himself recognized, however, nothing in the prior judgment transferred any interest in the basement or portico areas to Andrade. It merely required Stella and Barbara to exercise any votes they had, or might have, as owners of units in the condominium other than unit 1 in favor of such a result. Moreover, Andrade clearly did not rely on the prior judgment in building his addition in the portico area. Rather, as Andrade himself testified at trial, he built the addition in 1993, long before the prior judgment had been entered or, indeed, the litigation leading to the judgment had been begun.

To the extent the trustees delayed in seeking to enforce the

[5]Indeed, it appears from the record that when Barbara, as the owner of the condominium building, applied to the Westport building zoning board of appeals in 1981 to obtain a variance permitting conversion of the building into condominium units, she represented that "[t]he exterior of the building would be maintained substantially as it is with only minor changes for an additional entrance." The board referred to this representation in reciting its reasons for granting the variance.

terms of the master deed, it appears from the record that, at least until the judgment was entered in the prior action, Andrade was the nominal owner of several of the units in the condominium and, hence, may have either been a trustee himself, or effectively controlled the trustees. It does not appear from the record that any trustees who were independent of Andrade had unreasonably delayed in seeking to enforce the terms of the master deed, or that Andrade had suffered any prejudice as a result of any such delay. See *Calkins* v. *Wire Hardware Co.*, 267 Mass. 52, 69 (1929) ("[l]aches is not mere delay, but delay that works disadvantage to another"). See also *Myers* v. *Salin*, 13 Mass. App. Ct. 127, 137 (1982) (laches is affirmative defense on which defendant has burden of proof).

In view of all of the foregoing circumstances, we think there is no adequate basis for the judge's refusal to issue a mandatory injunction directing Andrade to cease his encroachment of the portico area and to return the area to its former condition. See, e.g., *Fergione* v. *Minuteman Regional Vocational Technical Sch. Dist.*, 396 Mass. 1015, 1016 (1986) (action by trial judge must be reversed for abuse of discretion where there is an absence of facts in record warranting the action).

The judgment of the Superior Court is vacated. A new judgment shall be entered declaring that the defendant's encroachment of the portico as well as the basement area is unlawful and directing the defendant to cease such encroachments and to restore both areas to the conditions they were in prior to his unlawful encroachments.

*So ordered.*