NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-1025                                      Appeals Court

COMMERCIAL WHARF EAST CONDOMINIUM ASSOCIATION & others[1]  vs.
DEPARTMENT OF ENVIRONMENTAL PROTECTION.


No. 19-P-1025.

Suffolk.     May 13, 2020. - July 31, 2020.

Present:  Green, C.J., Maldonado, & Blake, JJ.


Department of Environmental Protection.  License.  Notice.
    Administrative Law, Intervention, Official notice,
    Regulations.  Real Property, Condominium, Restrictions,
    Littoral property.  Trust, Public trust.



    Civil action commenced in the Superior Court Department on
July 22, 2016.

    Motions for judgment on the pleadings were heard by Michael
D. Ricciuti, J., and a motion to alter the judgment and for
reconsideration was considered by him.


    Seth Schofield, Assistant Attorney General, for the
defendant.
    John M. Allen for Commercial Wharf East Condominium
Association.

_____

    [1] PT By the Sea, LLC, intervener; Madeleine Bickert,
intervener; Elias Pettengill, intervener; John Cadigan,
intervener; Laurie Cadigan, intervener; Ted Sykes, intervener;
Karen Sykes, intervener; and John Shea and Julia Shea, as
cotrustees of the John B. Shea 2014 Revocable Trust and the
Julia P. Shea 2014 Revocable Trust, interveners.

Sarah A. Turano-Flores for Madeleine Bickert & others.


GREEN, C.J.  After the Department of Environmental Protection (department) issued a decision concluding that changes from commercial to residential use of units in the Commercial Wharf East condominium required the condominium to obtain a new license under G. L. c. 91, plaintiff Commercial Wharf East Condominium Association (CWECA) sought review in the Superior Court pursuant to G. L. c. 30A, § 14.  Once there, the owners of certain units in the condominium moved to intervene and were allowed to do so, but only on a limited basis.  Among the arguments CWECA advanced in the Superior Court action was its contention that the administrative proceeding was flawed from inception, because unit owners in the condominium, though given notice, were not joined as parties.  A Superior Court judge, acting on the parties' cross motions for judgment on the pleadings, agreed with CWECA, vacated the administrative decision, and remanded the matter to the department for further proceedings.  The department appealed,[2] and we affirm.

---

[2] The parties have raised no question concerning appellate jurisdiction.  Though an order of remand ordinarily is interlocutory and ineligible for appeal, an order remanding a matter to an administrative agency may be appealed where, as here, it is final as to the agency.  See, e.g., Commercial Wharf E. Condominium Ass'n v. Department of Envtl. Protection, 93 Mass. App. Ct. 425, 430-431 (2018).

Background.  Commercial Wharf dates back to Boston's earliest colonial days and has been the subject of the historical wharfing statutes.  See, e.g., St. 1832, c. 51; St. 1900, c. 96.  In 1964, as part of an urban renewal plan for the downtown waterfront area and Faneuil Hall, the "Waterfront North Area," including Commercial Wharf, was approved for "[r]esidential development on the wharves . . . of a very unique character, intimately related to the water and to the old brick and granite buildings which should be retained and rehabilitated for residential use."

On July 2, 1964, the Legislature enacted Chapter 663 of the Acts of 1964, entitled "An Act Authorizing the Department of Public Works[3] and the Boston Redevelopment Authority to Exercise Certain Powers in Regard to Certain Tidelands Along the Atlantic Avenue and Commercial Street Waterfront in the City of Boston."  Under Chapter 663, the Commonwealth conveyed "all right, title and interest of the [C]ommonwealth in and to the tidelands" specified therein to the Boston Redevelopment Authority, including the tidelands underlying Commercial Wharf, for the purpose of achieving the Urban Renewal Plan.  St. 1964, c. 663, § 2.[4]

---

[3] The Department of Public Works was then the State agency charged with tidelands licensing under G. L. c. 91.

A condominium master deed establishing the Commercial Wharf East condominium was executed and recorded with the Suffolk County registry of deeds on or about August 8, 1978. By its terms, condominium units on either the first or second floor (and two units on the third floor) were authorized for use interchangeably for either residential or commercial purposes.

On September 22, 2003, the department initiated two enforcement actions, by means of unilateral administrative orders, against two owners of a combined thirty-six units in the condominium.[5] The orders alleged that the owners had converted the units from commercial to residential use. Thereafter, on July 14, 2004, the department issued a minor modification to the two owners, pursuant to 310 Code Mass. Regs. § 9.22, expressly authorizing the change of eleven specified units from commercial to residential use, with one first-floor unit to remain a facility of public accommodation. Shortly following the department's issuance of the minor modification, the eleven

---

[4] In 1972, the Legislature, through Chapter 310 of the Acts of 1972, extended the procedure for redevelopment and rehabilitation of tideland areas along the waterfront for any urban renewal development project after January 1, 1971.

[5] According to the orders, Commercial Wharf East Property LLC owned twenty-six units and Wharf Condominium Units LLC owned ten units. Both entities were developers who held the units for sale.

units were sold to individuals under unit deeds that restricted their use to residential.

On September 16, 2011, Boston Boat Basin, LLC (Boston Boat), the owner and operator of a marina abutting the condominium at the water's end of Commercial Wharf, filed a request for determination of applicability under 310 Code Mass. Regs. § 9.06 (RDA).[6]  The RDA alleged a change in use of condominium units within the condominium, but did not identify the units it contended had changed in use; instead, it asserted that Boston assessor's and inspectional services records suggested that thirty-six units were in commercial use in 1984, while only one unit remained in commercial use in 2010.[7]  The RDA named CWECA as the owner of the property at issue, but did not name, or give notice to, the owners of any units within the condominium.

On June 5, 2013, the department issued its determination of applicability that concluded:

_____

[6] Boston Boat retained Fort Point Associates, Inc., the same consultant that had represented the unit owners in the 2004 enforcement action that resulted in the 2004 minor modification.

[7] The RDA acknowledged that the 2004 minor modification authorized a change from twelve commercial units to eleven residential units and one facility of public accommodation, but that the remaining twenty-four units were changed from commercial to residential use without authorization.  Because a change in use of twenty-four units affects more than ten percent of the condominium, the RDA asserted that the entire condominium building must obtain a new license.

"Relying upon the information as submitted by [Boston Boat] . . . pursuant to 310 CMR 9.05(1)(b), the changes in use of thirty-six (36) units from commercial to residential subsequent to January 1, 1984 described in the [RDA] require authorization."

On June 25, 2013, CWECA filed an administrative appeal of the determination, pursuant to 310 Code Mass. Regs. § 9.17. In its appeal, CWECA observed that it "neither owns nor controls any of the condominium units located within the [condominium]."[8] In an early scheduling order, issued on October 18, 2013, the presiding officer observed:

"Although unit owners in CWECA's building may be affected by this proceeding, none has intervened. CWECA should clarify whether it has provided or intends to provide notice of this proceeding to potentially affected unit owners by filing a brief statement with the Case Administrator as soon as practicable. The Department should clarify its practice for appeals where a Determination of Applicability for a condominium may determine the rights of unit owners, more specifically where the use of certain units potentially may be affected."

In response, the department advised the presiding officer by e-mail that "on information and belief, while there may not be a practice specifically relating to Determinations of Applicability, it has not historically been the practice of the Department to notify individual unit owners when notice is legally required by 310 CMR 9.00 to a property containing condominiums, but has instead been to notify the condominium

---

[8] But see footnote 15, infra.

association."  Continuing, the department advised that "a letter was sent to unit owners in this case after the Determination had been issued and the appeal had been filed."  Thereafter, the presiding officer sent two notices to all unit owners, on November 14, 2014, (regarding a prehearing conference) and on December 22, 2014 (advising of CWECA's appeal and advising that interested persons may intervene).  Between the dates of the first and second notices, CWECA filed a motion requesting that the department identify the units it claimed had changed in use.  However, that request remained pending at the time of the presiding officer's second notice.

Boston Boat filed its motion for summary decision on February 23, 2015.  The motion was not accompanied by any affidavits or other evidentiary material; instead, it summarized the evidence submitted with the RDA it previously had filed with the department.  CWECA requested, and obtained, an extension of time to respond to Boston Boat's motion and filed requests for discovery from the department and Boston Boat.  CWECA also filed, on January 22, 2015, a motion to disqualify the presiding officer, based on her previous role as counsel to the department's commissioner from 2000 to 2006, which included the period in which the department issued the 2003 administrative enforcement orders and the 2004 minor modification that resolved those orders and approved the change of use of certain units.

On June 30, 2015, the presiding officer issued three orders denying CWECA's discovery requests, its motion to disqualify her, and its motion requesting the department to identify the affected units.[9]  On July 2, 2015, Boston Boat filed a request that the presiding officer establish a date by which responses to its motion for summary decision would be due.  By e-mail to the parties later that day, the department's general counsel advised that the presiding officer previously assigned to the case had retired, effective as of June 30, 2015.

CWECA filed its opposition to Boston Boat's motion for summary decision on November 6, 2015, accompanied by affidavits and other supporting materials.[10]  On January 14, 2016, the successor presiding officer issued a recommended final decision recommending that Boston Boat's motion for summary decision be

---

[9] A subsequent attempt by CWECA to obtain information from the department identifying the affected units also was unsuccessful.

[10] Among other things, CWECA's affidavits contended that Boston Boat's assertion that thirty-six units had changed from commercial to residential use could not be true, because (i) all units on the third floor of the condominium or above have been used only for residential purposes at all time since the condominium was established; (ii) there were only thirty-six units in total on the first and second floors of the condominium; (iii) DEP approved eleven units for change from commercial to residential use in the 2004 modification; and (iv) at least seven other units among those on the first and second floors remained in commercial use.

allowed.[11]  The commissioner adopted the recommended decision in a final decision issued on May 3, 2016.[12]

On July 22, 2016, CWECA filed an appeal from the final decision in the Superior Court, pursuant to G. L. c. 30A, § 14. On September 21, 2017, certain of the then owners of units that were the subject of the 2004 minor modification moved to intervene in the Superior Court action.  At a hearing on their motion held on December 4, 2017, the motion judge expressed her view that, because the unit owners who intervened had previously been given notice and did not intervene "in a timely fashion," they should be allowed to intervene only on a limited basis and would not be allowed to "expand the matter in any respect."  She suggested that they attempt to reach agreement with the department on the scope of their involvement, including such matters as filing consolidated briefs and prohibiting any expansion of the administrative record, and present her with a proposed order.  Thereafter, a different motion judge adopted the proposed order the interveners and the department jointly

---

[11] Under department practice, the presiding officer conducts the adjudicatory hearing and issues a recommended decision, and the commissioner thereafter issues a final decision, typically adopting the recommended decision.

[12] The presiding officer thereafter issued a recommended final decision, recommmending that CWECA's motion for reconsideration be denied, and the commissioner adopted his recommendation.

submitted on February 1, 2018.  On July 16, 2018, the interveners, CWECA, and the department all filed motions for judgment on the pleadings.  After a hearing, a third motion judge issued an order denying the motions for judgment on the pleadings, but vacating the commissioner's decision and remanding the matter to the department, based on his conclusion that the department "erred as a matter of law by proceeding without the unit owners affected by the RDA."  A "judgment" entered,[13] and (after its motion to alter the judgment and for reconsideration was denied) the department appealed.

Discussion.  General Laws c. 91, known generally as the Waterways Act, "governs, among other things, water- and nonwater-dependent development in tidelands and the public's right to use those lands.  Chapter 91 finds its history in the public trust doctrine, 'an age-old concept with ancient roots . . . expressed as the government's obligation to protect the public's interest in . . . the Commonwealth's waterways.'"  Moot v. Department of Envtl. Protection, 448 Mass. 340, 342 (2007), quoting Trio Algarvio, Inc. v. Commissioner of the Dep't of Envtl. Protection, 440 Mass. 94, 97 (2003).  After the Supreme Judicial Court held, in Boston Waterfront Dev. Corp. v. Commonwealth, 378 Mass. 629, 648-649 (1979), that tidelands may

---

[13] See note 2, supra.

be used only for a purpose approved by the Legislature as a public use, and that changes in use over time required legislative approval, the Legislature amended G. L. c. 91, § 18, to require a new license for changes in use of structures or fill licensed under the Waterways Act. See St. 1983, c. 589, § 26. In addition, "[a]s part of its mandate to 'preserve and protect' the public's rights in tidelands, G. L. c. 91, § 2, the department, under G. L. c. 91, § 14, may not license uses or structures in tidelands, except as authorized by G. L. c. 91, § 18, unless such structures 'are necessary to accommodate a water dependent use.'" Moot, supra at 343.[14]

The department has promulgated regulations to administer its tidelands licensing authority. Under 310 Code Mass. Regs. § 9.05(1) (2014), the holder of a tidelands license must file an application with the department for (among other things):

> "(d) any change in use of fill or structures from that expressly authorized in a valid grant or license or, if no such use statement was included, from that reasonably determined by the Department to be implicit therein, whether such authorization was obtained prior to or after January 1, 1984."

In addition, under 310 Code Mass. Regs. § 9.06(1) (2014), "[a]ny person who desires a determination whether 310 CMR 9.00

---

[14] By regulation, the department protected otherwise unauthorized structures and uses lawfully commenced prior to 1984, provided no unauthorized structural alteration or change in use occurs after January 1, 1984. See 310 Code Mass. Regs. § 9.05(3)(b) (2014).

presently apply to any area of land or water, or any activity thereon, may submit to the Department a request for a determination of applicability," together with certain specified information concerning the location at issue.  When seeking a determination of applicability, the applicant is required by 310 Code Mass. Regs. § 9.13(1)(a) (2014) to send notice to (among others) "all landowners and easement holders of the project site and abutters thereto."  The decision of the department to grant or deny a license or permit, or on a request for a determination of applicability, is subject to review in an adjudicatory appeal, upon request of "an applicant who has demonstrated property rights in the lands in question, or which is a public agency," 310 Code Mass. Regs. § 9.17(1)(a) (2017), or "any person aggrieved by the decision of the Department to grant a license or permit who has submitted written comments within the public comment period" (emphasis added).  310 Code Mass. Regs. § 9.17(1)(b) (2014).

In the present case, the owners of units in the condominium were entitled to notice of Boston Boat's RDA, under 310 Code Mass. Regs. § 9.13(1)(a), by virtue of their status as landowners of the project site.  "Ownership of a condominium unit is a hybrid form of ownership in real estate, entitling the owner to both 'exclusive ownership and possession of his unit, G. L. c. 183A, § 4, and . . . an undivided interest [as tenant

in common together with all the other unit owners] in the common areas . . . .'"  Noble v. Murphy, 34 Mass. App. Ct. 452, 455-456 (1993), quoting Kaplan v. Boudreaux, 410 Mass. 435, 438 (1991). Though the association of unit owners is the sole entity authorized to litigate matters concerning the common areas, see, e.g., Strauss v. Oyster River Condominium Trust, 417 Mass. 442, 445 (1994); Cigal v. Leader Dev. Corp., 408 Mass. 212, 217-218 (1990), the association itself holds no ownership interest in the common areas, which are held by each of the unit owners in proportionate interest.[15]  See G. L. c. 183A, § 5.  Passing any question whether Boston Boat's notice to CWECA would have been adequate if its RDA affected only the common areas of the condominium,[16] the subject matter of Boston Boat's request plainly implicated the units themselves, as it was principally based on its assertion that a number of units had changed from commercial to residential use after 1984.  The RDA, and the department's review of it, was fundamentally procedurally flawed from its inception.

---

[15] In the present case, CWECA incidentally does hold a partial interest in the common areas, by virtue of its ownership of one of the commercial units in the condominium.

[16] We express no view on the question whether the unit owners would have been entitled to notice as "abutters" to the project site under 310 Code Mass. Regs. § 9.13(1)(a).

The department suggests that, even if Boston Boat's failure to give notice of its RDA to unit owners within the condominium was deficient, CWECA and the unit owners have failed to demonstrate any prejudice to their substantial rights entitling them to relief. See G. L. c. 30A, § 14 (7); Chiuccariello v. Building Comm'r of Boston, 29 Mass. App. Ct. 482, 486 (1990). Pointing to the fact that the first presiding officer in the adjudicatory appeal directed that notice be given to the unit owners in that proceeding, that a number of unit owners elected to intervene, and that sixty-five of the unit owners submitted affidavits as part of the appeal, the department suggests that the unit owners suffered no prejudice by virtue of Boston Boat's failure to give them notice in its RDA. However, the presiding officer denied CWECA's request to require that the department identify units alleged to have changed in use. Accordingly, individual unit owners were unable to determine whether their particular rights in their unit would be affected by the proceeding. Moreover, in her order denying CWECA's request, the presiding officer cited her view that CWECA was the owner of the building, rather than the unit owners, and observed that the proceeding was not an enforcement action against individual unit owners.[17] As to the first point, we have explained above why

---

[17] The presiding officer also observed that the burden of proof in the adjudicatory appeal rested on CWECA rather than the

that view is incorrect as a matter of law. As to the distinction between this determination of applicability and an enforcement proceeding, unless the department is taking the position (which it does not appear to be doing) that the determination has no preclusive effect against the unit owners, or unless the department otherwise is taking the position (which it does not appear to be doing) that the determination binds CWECA but not the unit owners, then the unit owners whose uses will be directly affected by the determination need to be identified in time for them to participate meaningfully in the proceedings and to attempt to protect their respective property interests.

We are unpersuaded by the department's suggestion that requiring notice to unit owners within condominiums established on filled tidelands will pose insurmountable practical challenges in its administration of the Waterways Act. In fact, review and evaluation of applications for a c. 91 license when a condominium is first established will not, as the department

---

department. But that illustrates rather than negates the significance of Boston Boat's failure to name the unit owners in its RDA. In the RDA review, antecedent to the adjudicatory appeal, the burden of proof rested on Boston Boat, and the unit owners presumably could, at that earlier stage, have insisted that Boston Boat identify which units were alleged to have changed in use, so that the owners of those units would have an opportunity to meet that assertion with evidence to the contrary.

contends, impose impossible burdens on the department's staff because of the multiplicity of parties; when a condominium is first established, it is the unitary owner of the project who submits the land and buildings to the provisions of the condominium statute.  See G. L. c. 183A, § 2.  Only when an attempt to review or modify a previously issued license arises after the condominium is established, and units sold to third parties, will multiple parties become involved.  But for the reasons we have explained, in such instances the unit owners have substantial property interests entitling them to participate meaningfully in the proceeding.

<u>Judgment affirmed</u>.

<u>Order entered March 15, 2019, denying motion to alter judgment and for reconsideration affirmed</u>.